THE JERRY V. PETRIE.

PETRIE TRANSP. CO., Inc., v. CHRISTIE SCOW CORPORATION et al.

No. A–17263.

District Court, E. D. New York.

May 3, 1946.

Dow & Symmers, of New York City, (Sherman V. Petrie, Jr., of New York City, of counsel), for libelant.

Foley & Martin, of New York City, (Christopher E. Heckman and Louis J. Lawrence, both of New York City, of counsel), for respondent.

Hill, Rivkins & Middleton, of New York City (William B. Gray, of New York City, of counsel), for American Stevedores, Inc.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for Concrete Units, Inc.

BYERS, District Judge.

### Findings of Fact

1. The scow Jerry V. Petrie owned by libelant (dimensions 115′ by 35.6′ by 9.2′ in depth) was chartered to the Christie Scow Corporation on July 30, 1943, and by it on October 6, 1943, to the American Stevedores, Inc. The scow was delivered to the latter at the bulkhead of Concrete Units, Inc., on the westerly side of the Bronx River at 161st Street, on the evening of October 6, 1943, at the said bulkhead, where she was made fast, port side to.

2. On October 7th she started to take cargo, and 350 tons were loaded, and on the following day this continued, 330 tons being added, making her total cargo 680 long tons of concrete blocks.

3. On the latter day when she was carrying about 600 tons, she grounded on her port side and took a list to starboard of two feet or so.

4. The scowman reported the list to the foreman of the Concrete Units, Inc., Carmine Castiello, who was working around the docks, supervising concrete workers, notwithstanding which loading continued.

5. The scow was taken away on the evening of the 8th, towage having been arranged by the Christie Scow Corporation.

6. The Petrie proceeded to 30th Street and the East River; thence to Pier 4 Hoboken, and on October 15th to Bushey's

Dock in Brooklyn; and no damage occurred to her during this interval other than as above stated.

7. When the scow was docked at Bushey's, a twist was found; that is to say, the starboard bow and the port stern were down a matter of six inches.

8. The Petrie took the twist while being loaded with concrete blocks at the said bulkhead, by reason of a strand which occurred there, caused by an uneven bottom in the berth, which caused the list referred to in finding 3.

9. $5,582.53 was expended for general repairs to the scow between May 22 and June 8, 1943, and the vessel was in first-class condition in all respects as of the latter date, and no damage was sustained between then and her going on charter to Christie in July.

10. The said scow Petrie was in all respects sound and seaworthy when delivered by libelant to Christie Scow Corporation on July 30, 1943.

11. The said scow was returned by Christie to the libelant on or about October 16, 1943, in damaged condition not caused by ordinary wear and tear.

12. The said scow was in the condition described in finding 10, when she was delivered by Christie to American Stevedores, Inc., on October 6, 1943.

13. The said scow was in the condition described in finding 11 when she was returned to Christie on or about October 16, 1943.

14. The damage described in finding 8 was caused by the failure of Concrete Units, Inc., to maintain a proper berth at the said bulkhead in which the said loading could be conducted without damage to the said scow caused by an uneven bottom at said berth.

## Conclusions of Law

The libelant is entitled to an interlocutory decree against Christie, with costs; the latter is entitled to a decree over against American Stevedores, Inc.; the latter is entitled in turn to a decree over against Concrete Units, Inc.

## Comment

The affirmative proof for the libelant is not contradicted as to what took place, and must be accepted, the more so because the Concrete Units, Inc., did not call Castiello, who is still in its employ, to contradict the scowman, Klein.

The argument that American Stevedores, Inc., failed to notify the Concrete Units, Inc., respecting the survey would be more persuasive if it were shown that there could be any real question about the presence of the twist on October 15, 1943, when the survey was held.

The failure to file the libel until thirteen months had elapsed probably was due to a belief that so small a claim as $658 would not require a lawsuit for its vindication. Perhaps if a larger sum had been involved, the American Stevedores, Inc., would have been more insistent, in October of 1943, about formally notifying Concrete Units, Inc., of the claim, than in fact it was. There were more pressing problems in the minds of most men at that time, than this modest claim. If it could be seen that any actual injustice resulted from the delay, the argument would be more impressive.

Settle decree.